IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA<br><br>Plaintiff,<br><br>vs.<br><br>EDVANTIC, INC. ET AL.<br><br>Defendants. | CIVIL ACTION<br><br>No. 2:21-cv-01135-PBT |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR DEFAULT JUDGMENT**

Plaintiff, Trustees of the University of Pennsylvania, by its agent the Aresty Institute of Executive Education of the Wharton School ("Plaintiff" or "Wharton"), hereby files this Memorandum of Law in Support of its Motion for Default Judgment against defendants Edvantic, Inc. ("Edvantic"); TMI-Wharton Programs ("TMI"); CredForce America, Inc. ("CredForce"); and Rajiv Gupta ("Gupta", collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b) (Doc. No. 10) and states as follows:

**I.     Introduction**

As set forward in the Complaint, Defendants have systematically misrepresented their relationship with Wharton.  Defendant's false statements and misuse of Wharton's trademarks have damaged Wharton, as detailed in the Complaint. Defendants did not timely respond to the Complaint.  The Clerk of Court entered a default pursuant to Federal Rule of Civil Procedure 55(a).  No attorney has entered an appearance for Defendant or in any way responded to the Complaint.

1

Accordingly, Wharton respectfully requests that the Court enter a default judgment in Wharton's favor and against Defendants enter a permanent injunction precluding Defendant from using any of Plaintiff's intellectual property on its program material, websites, correspondence, or advertising.

## II. BACKGROUND

Plaintiff is the Trustees of the University of Pennsylvania, a Pennsylvania nonprofit corporation, by its agent the Aresty Institute of Executive Education of the Wharton School. The Wharton School is recognized globally for intellectual leadership and ongoing innovation across every major discipline of business education.

Through the Aresty Institute of Executive Education, the Wharton School provides educational programs for individuals, organizations, and executives that result in certifications and, in some programs, Wharton alumni status. These programs consist of the Wharton Online (self-paced) portion, and the Wharton in-person, on-campus experience. Specifically, the programs at issue included the Global Fellow of Talent Management and an Associate Fellow in Talent Management. Following the completion of certain assignments, participants in the programs attend an in-person "Masterclass" at Wharton's campus (including room, board, and activities) with seven days of Wharton content for the Global Fellow ("GFP") learners and four days for the Associate learners ("AFP").

Between 2017 and 2019, defendant CredForce was responsible for marketing, selling and collecting fees for the GFP and AFP offerings. In addition, CredForce managed the application and registration processes and assigned some materials to students. Pursuant to written agreements between CredForce and Wharton, Wharton invoiced CredForce for the design and delivery of executive education programming and services provided between 2017 and 2019 (the "Invoices").

In November 2019, CredForce and Wharton were in discussions regarding the 2020 edition of the program. Critically, there was no signed agreement between Wharton and CredForce for the 2020 programs at that time or any other time. Despite the lack of a signed agreement for 2020, CredForce was actively marketing and selling access to Wharton programs to third parties. As CredForce began to receive applicants and accept them into the programs, CredForce contacted Wharton to register the learners in the Wharton Online courses. In December 2019, Wharton contacted CredForce and demanded payment of the outstanding Invoices, which total about $1.3 million.[1]

Pertinent to this action, on December 10, 2019, the Wharton emailed CredForce, via defendant Sanjeeva Shukla, and unequivocally informed them: "We need the funds ASAP. Unfortunately, we will not be able to move forward with the new offerings without payment[.]" *See* December 10, 2019 email attached hereto as Exhibit A. Through winter of 2019 and spring 2020, CredForce continued to give Wharton excuses for non-payment (tax issues, reorganization hurdles, and the like), and promises for future payment by certain dates (that they missed without exception). In June 2020, Wharton sent a demand for payment letter, followed by a cease and desist letter, followed by an email on June 23, 2020 stating: "Given the current legal actions taken by the University to receive the outstanding debt CredForce owes to the School, regrettably we must sever all ties with CredForce until the funds are paid in full." *See* Notices attached hereto as Exhibit B.

As alleged in the Complaint in this action, through the fall of 2020, CredForce continued to market the full (including in-person) Wharton programs and register participants for the online portion of the program through Wharton Online, even though CredForce was on notice that there

---

[1] In late 2020, Wharton sued CredForce for the balance due under the Invoices in this Court, which is docket No. 2:20-cv-05096-PBT (the "CredForce Action"). An unopposed motion for a default judgment is currently pending in the CredForce Action.

would be no 2020 in-person program.

Moreover, after the CredForce Action was filed, CredForce transferred materials relating to Plaintiffs' programs to defendant Edvantic and later defendant TMI. *See* October 20, 2020 email from Support@WhartonTMI, attached hereto as Exhibit C. Wharton does not have a current agreement with either Edvantic, CredForce or TMI to advertise or use Plaintiff's intellectual property or images. Neither Edvantic, CredForce nor TMI have any current agreement with Wharton to offer Wharton's programs or to solicit students to attend Wharton's programs.

Despite the fact that there is no contractual relationship between Wharton and CredForce, Edvantic or TMI for any programs since the March 18, 2019 agreement governing programs taking place in 2019, Defendants have repeatedly misrepresented that such a relationship exists. As detailed in the Complaint, Plaintiff learned that Defendants have been fraudulently using Plaintiff's intellectual property, including Wharton's trademarks (the "Wharton Marks" set forth in detail in the Complaint and Exhibit D hereto), and Wharton letterhead to fraudulently make promises of future on-campus programming at Wharton on Wharton's behalf, and attaching thereto a ***forged signature*** of a Wharton employee. *See* Exhibit E. Wharton later discovered that Defendants had continued to sell and collect tuition payments from students for the AFP and GFP offerings (including in-person programs at Wharton) without Wharton's permission or involvement and after Wharton repeatedly ordered Defendants to cease and desist from doing so.

Wharton filed the Complaint in the above-captioned action on March 9, 2021. *See* Doc. No. 1. The Complaint brings causes of action for: defamation (Count I); trademark infringement (Count II); unfair competition and false designation of origin (Count III); cybersquatting under 15 U.S.C. § 1125(d) (Count IV); trademark dilution (Count V); state

trademark dilution (Count VI); common law trademark infringement (Count VII); and unjust enrichment (Count VIII).

On March 18, 2021, Edvantic, CredForce, TMI were each served with the Complaint and Summons in compliance with Federal Rule of Civil Procedure 4(h)(1)(B). *See* Doc. Nos. 2-4. Additionally, on March 18, 2021, defendant Rajiv Gupta was served with the Complaint and Summons in compliance with Federal Rule of Civil Procedure 4(e)(2)(A). *See* Doc. No. 5.[2]

Defendants' answer to the Complaint was due on April 8, 2021, no extension of time has been requested or granted, and the time for Defendant to file an answer to the Complaint has expired. *See* Federal Rule of Civil Procedure 4(d)(3); *see* Doc. Nos. 3-5.

On April 12, 2021, Plaintiff filed a request for entries of the default because no answer (or motion to dismiss or of any kind) has been filed by Defendants. *See* Doc. Nos. 6-9. The Clerk entered defaults pursuant to Federal Rule of Civil Procedure 55(a) on April 12, 2021.

Since the Complaint was filed, Wharton has discovered that approximately sixty (60) individuals had signed up for the Wharton programs with Defendants for 2020-2021, despite the fact that Defendants were repeatedly informed by Wharton that Wharton did not enter and would not be entering any agreement with Defendants for any future programs.

## III.   ARGUMENT

### A.   Standard of Review

Rule 55(b) of the Federal Rules of Civil Procedure provides for entry of default judgment against a defendant who has not appeared and who is neither a minor nor an incompetent person. Fed.R.Civ.P. 55(b). Once a party has defaulted, the consequence is that "the factual allegations of the complaint, except those relating to the amount of damages, will be

---

[2] The time to serve the other defendants, Sanjeeva Shukla and Lawrence Ingerly, under Rule 4(m) has not expired and a motion for alternative service for these defendants will follow.

5

taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). When a party has defaulted and all of the procedural requirements for a default judgment are satisfied, the decision to enter default judgment under Rule 55(b)(2) rests in the discretion of the district court. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987). However, in undertaking this evaluation, this Court must consider: (1) whether the plaintiff will be prejudiced if the default is denied, (2) whether defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *See, e.g., Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).[3]

### B.  Wharton is entitled to a default judgment against Defendants.

In the instant matter, it is clear that the factors articulated in *Chamberlain* weigh in favor of granting default judgment in Wharton's favor and against the Defendants. *See Chamberlain*, 210 F.3d at 164. "When a defendant is in default and has not opposed the motion for default judgment . . . trial courts in this circuit give somewhat less deference to *Chamberlain*." *Smith Transp., Inc. v. Truck & Bus Wash, Inc.*, 2007 WL 320826 (W.D. Pa. Jan. 30, 2007) (collecting cases).

First, there is more than just a risk of prejudice to Wharton if default is denied. In fact, Wharton is being prejudiced by Defendants' actions because Defendants are actively misrepresenting that they have an agreement with Wharton to offer programs in 2021. Indeed, Defendants have been marketing and collecting funds from third parties for these programs without Wharton's permission or involvement for nearly a year despite knowing that Wharton

---

[3]  It should be noted, however, "*Chamberlain*, perhaps counterintuitively, applies this three-part test to the motion seeking a default judgment whereas the case on which *Chamberlain* relies--*$55,518.05 in U.S. Currency*--sets out the test in the context of a motion to overturn a default judgment." *Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003).

would not be offering the programs.  Moreover, absent a default judgment Wharton faces the real threat that the prejudice will continue as there is nothing stopping Defendants from advertising the programs for 2022 as well.  Finally, the interest in avoiding prejudice is less salient where, as here, the defendant has neither moved to set aside default nor opposed the entry of default judgment. *Id.*

"The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *United States v. $ 55,518.05*, 728 F.2d 192, 195 (3d Cir.1984).  Where—as here—there is no responsive pleading, there is no opportunity to gauge the merits of any defense, and this factor does not militate against default judgment.  *Bd. of Trs. of the Constr. Indus. Pension Laborers' Dist. Council Fund v. ABC*, 2004 U.S. Dist. LEXIS 22945, at 6-7 (E.D.Pa. Nov. 4, 2004) (finding that because the defendant failed to file a responsive pleading the court was not in a position to determine whether the defendant has a meritorious defense); *Carpenters Health & Welfare Fund v. Naglak Design*, 1995 U.S. Dist. LEXIS 566, at *7 (E.D.Pa. Jan. 18, 1995) (same).  Moreover, there is no defense for Defendants' actions because they were notified repeatedly by Wharton that they would not be entering a contract with Defendants for the 2020 or 2021 programs unless they rendered full payment for the Invoices from the previous programs.

It is also impossible for the Court to determine whether Defendant's delay was attributable to culpable conduct.  However, Wharton served Defendants copies of its Complaint, its Request for Entry of Default and its Motion for Default Judgment. Moreover, in the CredForce Action, CredForce has filed a self-titled "Response to the Summons" without an attorney, and the Response was later struck from the docket.  Defendants are well aware of their obligations in this litigation and their failure to appear and defend merits the default judgment

granted in the accompanying Order. Second, Defendant has not asserted any defense by answering the allegations of the Complaint. Finally, there is no excuse or reason for Defendants' default other than Defendants' own conduct. Defendants were served with all of the required documents. Despite this fact, Defendants have neither engaged in the litigation process nor offered any reason for its failure to appear. Therefore, a finding that Defendants are culpable for their failure to appear and that there is no basis to excuse this conduct is required. Accordingly, default judgment is warranted.

Here, the unchallenged record establishes Wharton's legitimate claims for trademark infringement and defamation, entitling Wharton to a default judgment against Defendants.[4]

With respect to the Wharton Marks, Defendants have not removed all references to Wharton from its website and materials. Instead, Defendants continue to represent that they have a relationship with Wharton and display the Wharton Marks on their websites (both publicly and on password-protected pages) and marketing materials.

The law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion.'" *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994) (citations omitted). As a result, in order to prevail on its trademark infringement claim, Plaintiff must demonstrate: (1) that it holds and owns valid and legally protectable trademarks; (2) that it owns the Wharton Marks; and (3) that Defendants' use of the Wharton Marks will likely cause confusion as to the source, affiliation, and/or sponsorship

---

[4] Here, the Court has personal jurisdiction over the Defendants.  Although Defendants' alleged conduct occurred outside Pennsylvania, the Court's personal jurisdiction over Defendants can be maintained because Wharton suffered injury in Pennsylvania, thus satisfying the requirements of 42 Pa.C.S. § 5322(a)(4) (the "tort out/harm in" provision of Pennsylvania's long-arm statute).  Moreover, Defendants solicited and transacted business in Pennsylvania, such that Defendants should have reasonably anticipated being haled into court in Pennsylvania. *Toys R Us, Inc. Step Two, S.A.*, 318 F.3d 446, 453 (3d Cir. 2003).  In addition, as noted in the CredForce Action, CredForce consented to this Court's jurisdiction.

of the intellectual property. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684–85 (D.N.J. 2015). Here, it is unquestionable that Plaintiff holds and owns the Wharton Marks. Certificates of registration issued by the United States Patent and Trademark Office ("USPTO") for the Wharton Marks demonstrate, on their face, the validity and protectability of the Wharton Marks, as well as Wharton's ownership. *See* Exhibit D. For that reason, the first two requirements satisfied. *See e.g., Coach, Inc. v. Cosmetic House*, 2011 WL 1211390, at *2 (D.N.J. Mar. 29, 2011) (citing 15 U.S.C. §§ 1057(b), 1115(a) and noting that a certificate of registration constitutes prima facie evidence of the validity and ownership of the marks).

As for the third requirement, the likelihood of confusion exists "when the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc*., 30 F.3d 466, 472–73 (3d Cir. 1994) (internal quotations omitted). For the trademark claims set forth in the Complaint, "[p]roof of actual confusion is not necessary; likelihood of confusion is all that need be shown." *Ford Motor Co. v. Summ*, 930 F.2d 277, 292 n. 8 (3rd Cir. 1991) (internal citations omitted). The court focuses on the marks to determine whether they are "confusingly similar." *Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1063 (3d Cir. 1991).

Here, it is undeniable that that Defendants' use of the Wharton Marks will likely cause confusion as to the source, affiliation, and/or sponsorship of the intellectual property. Indeed, Defendants are advertising and promoting Wharton programs despite the fact that no such program exists or is scheduled to occur. Defendants have collected tuition from third parties for the non-existent programs. Defendants have also sent forged letters using the Wharton Marks. This is the epitome of not only likely but actual confusion in the marketplace.

"A permanent injunction issues to a party after winning on the merits and is ordinarily granted upon a finding of trademark infringement." *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed.Cir.1996). Nevertheless, in seeking a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) "that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006).

Here, Wharton meets this four-factor test for injunctive relief, and the Court should grant permanent injunctive relief. First, irreparable harm is exists in clear cases of confusion, and that Defendants' use of Wharton Marks to solicit enrollees for a non-existant program is the height of confusion. *Pappan Enters., Inc. v. Hardee's Food Sys., Inc*., 143 F.3d 800, 805 (3d Cir. 1998) (citation omitted). With respect to the second requirement, although a remedy at law would provide some degree of monetary relief, it would not adequately compensate Plaintiff for the reputational and goodwill injury associated with the fiction that a program is being offered at Wharton (when one in fact is not) nor would it necessarily prevent, or even impede, future trademark infringement. A balancing of hardships strongly favors issuance of an injunction. Indeed, the injunction sought only requires Defendant to abide by the law and to refrain from infringing the intellectually property. In the absence of an injunction, Plaintiff faces the hardships that gave rise to this litigation: loss of reputation, goodwill, and sales. In that respect, any harm suffered by Defendants as a result of an injunction would be self-inflicted. *See Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir.2002) ("[T]he injury a defendant might suffer if an injunction were imposed

may be discounted by the fact that the defendant brought the injury upon itself."). Finally, issuing an injunction furthers the public's interest in the protection of Plaintiff's intellectual property, in the avoidance of consumer confusion and in the prevention of further fraud on the part of the Defendants. Additionally, Wharton requests an accounting of Defendants' profits related to the programs, and disgorgement of such profits to deter future infringement. *See Marshak v. Treadwell*, 595 F.3d 478, 495 (3d Cir. 2009) ("[Plaintiff] did not need to establish actual damages to justify the imposition of an accounting of profits—she needed only to show that an accounting was necessary to deter infringement or that [defendant] and his associates were unjustly enriched."); 15 U.S.C. § 1117(a).

The test for a defamation claim requires plaintiff to allege: (1) defamatory character of communication; (2) its publication by a defendant; (3) its application to plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to plaintiff; (6) special harm resulting to plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *Clemente v. Espinosa,* 749 F.Supp. 672 (E.D. Pa. 1990) (citing 42 Pa.C.S.A. § 8343(a)(1), setting forth that standard for defamation).

As detailed in the Complaint, Wharton satisfies these seven factors. Defendants have repeatedly published statements and communications that they are associated way with Wharton, including, stating: (i) Defendants have an ongoing relationship with Wharton; (ii) Defendants are able to make representations on behalf of Wharton; (iii) Defendants can certify course attendance on behalf of Wharton—including defendant Ingerly sending a third-party the forged signature of a Wharton employee and an altered letter on Wharton letterhead; (iv) Defendants are able to collection tuition for programs on behalf of Wharton; (v) Defendants have published on their

respective and related websites that Defendants have an on-going relationship with Plaintiff; and (vi) Defendants are able to go forward with the Wharton-related programs by April 30, 2021.

The statements set forth above are defamatory because they are fairly calculated to harm the reputation of the Plaintiff; lower the Plaintiffs' reputation in the estimation in of the community—including but not limited former and potential participants in Plaintiff's educational programs; and deter third parties from associating with Plaintiff. The statements set forth above are not opinions.  Rather, they are misrepresentations of Plaintiff's relationship with Defendants. As set forth above, Defendants have no relationship with Plaintiff or Plaintiff's programs. The statements were published by the Defendants in mass emails; on their webpages; and in response to individual third parties. The statements relate to Plaintiff because they directly deal with programs offered by Plaintiff at the Wharton School and sanctioned online by the Wharton School. Moreover, if third parties seeking information regarding Plaintiff's programs view or receive information about the Plaintiff's programs from Defendants' statements, they will understand the statements' defamatory meaning.  Defendants falsely stated that they could certify course attendance on behalf of Wharton—including Ingerly sending a third party the forged signature of a Wharton employee and an altered letter on Wharton letterhead. Third parties also will understand that the statements are intended to be applied to Plaintiff. Plaintiffs have and will incur special and actual damages with regard to Defendants' statements by way of remedial measures that Wharton must undertake to protect its brand, lost tuition, program attendance, and loss in future attendees that currently total at lease $700,000 for programs being offered to third parties that have signed up and paid for so-called Wharton programs with and through Defendants.[5]

---

[5] This damages calculation does not take into account the fact that Wharton will not be able to run other programs at the same time (lost opportunity cost), or loss of future participants from this program, or the

**IV.     RELIEF REQUESTED**

For the foregoing reasons, Plaintiff respectfully requests that the Court schedule a hearing on this motion default judgment.  Moreover, Wharton respectfully requests a default judgment for $700,000 should be entered in favor of Plaintiff and against Defendants, jointly and severally, as well as a permanent injunction and an accounting of Defendants and such other relief that the Court may determine is fair and just.

                                          Respectfully submitted,

                                          SIRLIN LESSER & BENSON, P.C.

                                           /s/  Patrick J. Troy
                                          Patrick J. Troy (PA Id. 89890)
                                          123 South Broad Street, Suite 2100
Dated:  May 6, 2021                     Philadelphia, PA 19109
                                          *Attorneys for Plaintiff*

---

disgorgement of Defendants' profits, or other damages Wharton will suffer as a result of Defendants' defamatory statements, and trademark misuse, dilution, and infringement. It is also exclusive of the approximately $1.3 million sought in the CredForce Action for the unpaid Invoices.